IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Solutions in Hometown Connections,** *et al.*,<br><br>        Plaintiffs,<br><br>**v.**<br><br>**Kristi Noem,** *et al.*,<br><br>        Defendants. | Civil Case No. 8:25-cv-885-LKG |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ADDRESSING**
*DEPARTMENT OF EDUCATION v. CALIFORNIA*, **No. 24A910, 604 U.S. \_\_\_ (2025)**

The Supreme Court's two-paragraph per curiam order in *Department of Education v. California* stayed the district court's temporary restraining order pending appeal. No. 24A910, 2025 WL 1008354 (U.S. Apr. 4, 2025). That TRO "enjoin[ed] the Government from terminating various education-related grants" and "require[d] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." *Id.* at *1. The majority concluded that the challengers had not shown they would suffer *any* irreparable harm if the TRO were stayed because the states "have the financial wherewithal to keep their programs running." *Id.* The majority also found that the federal government was likely to show that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204, 212 (2002)). Whether to issue a stay pending appeal "is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009). The Supreme Court's fact- and circumstances-specific stay ruling in *California* does not undermine Plaintiffs' entitlement to preliminary relief here.

**1.** Unlike the states in *California*, Plaintiffs do not "have the financial wherewithal to keep their programs running." 2025 WL 1008354, at *1. Instead, Plaintiffs have to lay off critical staff, cancel programming, and incur ongoing legal representation costs. Ex. G, J.R. 022 ¶ 14, Ex. Z; J.R. 509 ¶ 2. As one Plaintiff put it: "Losing this grant has crippled CCI" because, among other things, it is "under-resourced to the point that [it] can no longer deliver services in a timely fashion" so the termination "pose[s] a serious threat to the long-term survival" of the organization. Ex. Z; J.R. 511 ¶ 9. Even Plaintiffs who were initially able to cover a few weeks' worth of expenses with temporary funding will run out by mid-April. Ex. C, J.R. 005 ¶ 16; Ex. G, J.R. 021 ¶ 13. Reputational harm, which *California* does not raise, heavily affects Plaintiffs as grassroots

nonprofits, who rely on their reputations as organizations offering reliable services to bring in new clients, as well as attract outside funding like law firm donations. Ex. Z, J.R. 510 ¶ 7; Ex. AA, J.R. 513 ¶¶ 5-6.The upshot in *California* was that because plaintiffs could keep their programs running—if they "instead decline[d] to keep the programs operating, then any ensuing irreparable harm would be of their own making." 2025 WL 1008354, at * 1. That is nothing like this case.

**2.** *California*'s cursory Tucker Act analysis cannot decide the fate of Plaintiffs' claims. Whether the Tucker Act applies "is regrettably complex." *D.C. v. United States*, 67 Fed. Cl. 292, 302 (2005). But the application of *Bowen v. Massachusetts*, 487 U.S. 879 (1988) to two recent petitions for stays—*California* and *Department of State v. AIDS Vaccine Advocacy Coalition*, 145 S. Ct. 753 (2025)—makes clear that this case falls well outside of the Tucker Act's jurisdictional mandate.

In *Bowen*, the Supreme Court rejected the argument that an injunction to enforce a statute's mandate that the government "shall pay" certain sums to States amounted to money damages unavailable under the APA. 487 U.S. 879, 900 (1988). The Supreme Court read "money damages" narrowly to cover only "a suit seeking money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated." *Id*. As the Court explained, the State was not seeking monetary compensation for injuries caused by the government's failure to pay; rather, it was "seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.* "That is, since the orders are for specific relief (they undo the Secretary's refusal to reimburse the State) rather than for money damages (they do not provide relief that substitutes for that which ought to have been done) they are within the District Court's jurisdiction under § 702's waiver of sovereign immunity." *Id.* at 910.

*Bowen*'s reasoning controls here. Plaintiffs' claims here are statutory, regulatory, and constitutional violations—they ground them in, among other sources, the Constitution, the APA, the Impoundment Control Act, the Anti-Deficiency Act, the Homeland Security Act, and Appropriations Acts from 2023 and 2024. Complaint ¶¶ 116, 118. An injunction barring Defendants from the wholesale termination of CIGP grants in violation of these laws would not "transform the nature of the relief sought," which is "specific relief, not relief in the form of damages." *Id.* at 901. Indeed, *Bowen* held that a plaintiff's "interest in planning future programs … may be more pressing than the monetary amount in dispute. Such planning may make it important to seek judicial review—perhaps in the form of a motion for preliminary injunction—as promptly as possible after the agency action becomes final." *Id.* at 906-07.

But in *California*, the TRO required the Department of Education to pay plaintiffs past due funds and to reinstate grants based on flawed reasoning for the termination. *See California v. Dep't of Ed.*, No. 25-1244, 2025 WL 878431, at *1 (1st Cir. Mar. 21, 2025). The challenge involved considering the terms of those particular grants and the individual termination decisions themselves. *See, e.g.*, Complaint ¶ 166, 183, *California v. Dep't of Ed.*, 25-cv-10548 (D. Mass), ECF No. 1. As a result, the Supreme Court determined that the challenge in *California* was closer to *Great-West Life &Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) than to *Bowen*. *Knudson* addressed "specific performance of a *contractual* obligation to pay *past* due sums." Specifically, petitioners sought "to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity." 534 U.S. at 210.[1]

---

[1] Notably, the Court's order did not explain how *Knudson*, which was a suit between private parties, could apply to the government. *Knudson* reasoned that while "an injunction to compel the payment of money past due" is not available in equity, "specific performance" of a grant or contract "to prevent future losses" were. *Id*. at 211. Such instances include actions to "enforce an obligor's

3

Here, Plaintiffs do not challenge the individualized basis of the terminations (indeed there are none) and do not seek grant-specific remedies or "to enforce a contractual obligation to pay money" that is owed. *California*, 2025 WL 1008354, at * 1. Unlike *California*, review of Plaintiffs' grant agreements and relevant grant regulations is not necessary to resolve the litigation. Instead, they seek preliminary relief in an APA challenge to Defendants' across-the-board freeze and termination of all CIGP funding based on Secretary Noem's memo. This case then, is much more like *Department of State v. AIDS Vaccine Advocacy Coalition*, 145 S. Ct. 753 (2025), in which the Supreme Court denied a stay, even though the government argued that the Tucker Act applied.

In addition to the above distinctions from *California*, even Justice Scalia's *Bowen* dissent agreed that "[t]here may be circumstances in which damages relief in the Claims Court is available, but is not an adequate remedy. For example, if a State could prove that the Secretary intended in the future to deny Medicaid reimbursement in bad faith, forcing the State to commence a new suit for each disputed period, an action for injunctive relief in district court would lie." *Id.* at 925. That is the case here. Defendant's indefinite freeze turned a de facto termination into an actual wholesale termination of CIGP grants that they were required to disburse, making clear Defendants' intention to deny future disbursements. It is precisely this "ongoing complex relationship which [makes] it important that district court adjudicate future disputes" under the APA rather than the Tucker Act. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 327 (2020) (Affordable Care Act's provision to compensate insurers for *past* losses was subject to the Tucker Act, unlike the grant program in *Bowen*, which involved clarifying the government's *prospective* duties.) *see also*

---

duty to make further monthly payments, after the obligor had consistently refused to make past payments concededly due, and thus threatened the obligee with the burden of brining multiple damages actions." *Id.* But courts cannot order specific performance against the government. *See Bowen*, 487 U.S. at 925 (Scalia, J., dissenting).

4

*Sanford Health Plan v. United States*, 969 F.3d 1370, 1378 (Fed. Cir. 2020) (Tucker Act jurisdiction "yields" when the APA "provides an avenue for relief.") (cleaned up).

That is because equitable remedies for prospective monetary relief is limited by the Tucker Act. Equitable remedies such as enjoining contrary to law terminations of grants are not available under the Tucker Act. *See e.g., Sergent's Mech. Sys. v. United States*, 157 Fed. Cl. 41, 47 (2021) (Federal Claims Courts "may award equitable or other nonmonetary relief in Tucker Act cases in only three statutorily defined circumstances: (1) in bid protest actions brought pursuant to 28 U.S.C. § 1491(b); (2) as "incident of and collateral to" a monetary judgment, as set out in the first two sentences of 28 U.S.C. § 1491(a)(2); and (3) for certain types of nonmonetary CDA claims, as described in the last sentence of § 1491(a)(2)."). Thus, despite Justice Scalia's admonition in his *Bowen* dissent that "[i]t does not take much lawyerly inventiveness to convert a claim for payment of a past due sum (damages) into a prayer for an injunction against refusing to pay the sum, or for a declaration that the sum must be paid, or for an order reversing the agency's decision not to pay[,]" *id.* at 915-16, here Plaintiffs are seeking to enjoin Defendants from violating several statutes that necessitate the CIGP grants and unequivocally require Defendants to fund CIGP grants through appropriations. "Unlike normal contractual undertakings, federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy." *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669 (1985). So Plaintiffs' "claims arise under a federal grant program and turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties." *Maryland Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985). This is squarely within this court's equitable jurisdiction under the APA to enjoin the termination and protecting the ongoing grantor-grantee relationship.

April 7, 2025

Niyati Shah (Bar No. 31526)
Shalaka Phadnis***
ASIAN AMERICANS ADVANCING
JUSTICE—AAJC
1620 L St. NW, Suite 1050
Washington, DC 20036
Phone: (202) 296-2318
nshah@advancingjustice-aajc.org
sphadnis@advancingjustice-aajc.org

Jose Perez**
LATINOJUSTICE PRLDEF,
475 Riverside Dr., Suite 1901
New York, NY 10115
Phone: (212) 219-3360
Fax: (212) 431-4276
jperez@latinojustice.org

Nickole Durbin-Felix**
LATINOJUSTICE PRLDEF
4700 Millenia Blvd., Suite 500
Orlando, FL 32839
Phone: (321) 247-6657
ndurbin-felix@latinojustice.org

Respectfully submitted,

 /s/ Bradley Girard
Bradley Girard (Bar No. 31437)
Sarah M. Rich*
Adnan Perwez*
Robin F. Thurston[+]
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
bgirard@democracyforward.org
srich@democracyforward.org
aperwez@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs*

[+]*Application for full admission pending*
**Admitted* pro hac vice
*** *Motion to appear* pro hac vice *forthcoming*
*** *Motion to appear* pro hac vice *pending*

6