## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**Solutions in Hometown Connections** *et al.*,

        Plaintiffs,

**v.**

**Kristi Noem** *et al.*,

        Defendants.

**Civil Case No. 8:25-cv-00885-LKG**

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
## PRELIMINARY INJUNCTION & APA § 705 STAY

**TABLE OF CONTENTS**

Table of Authorities .................................................................................................................... ii

Argument ................................................................................................................................... 1

    I.    This Court can decide Plaintiffs' claims. ............................................................... 1

        A.  The Tucker Act does not apply. ..................................................................... 1

        B.  CIGP's dismantling is a discrete agency action that this Court can enjoin. ................... 6

        C.  Plaintiffs have standing to challenge Defendants' violation of appropriations acts. ........ 7

    II.  Plaintiffs are likely to succeed on the merits of their APA, separation of powers, and *ultra vires* claims. ................................................................................................... 8

        A.  Defendants have no discretion to dismantle the CIGP, and do not contest that the dismantling was arbitrary and capricious. ...................................................... 8

        B.  CIGP's dismantling is contrary to law. ........................................................ 9

        C.  Dismantling the CIGP exceeds statutory authority, violates the separation of powers, and is *ultra vires* ................................................................................... 12

    III.  Plaintiffs are suffering irreparable harm that cannot be remedied by money damages or after a final judgment. ................................................................................... 13

    IV.  The balance of the equities favors Plaintiffs and broad relief is warranted. ...................... 15

Conclusion ............................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*,
  No. 25-5098 (D.C. Cir. Apr. 2, 2025)............................................................................... 9

*Am. Ass'n of Colls. For Tchr. Educ. v. McMahon*,
  No. 25-1281, 2025 WL 1232337
  (4th Cir. Apr. 10, 2025) ................................................................................................... 4

*American Science and Engineering, Inc. v. Califano*,
  571 F.2d 58 (1st Cir. 1978)............................................................................................... 3

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)................................................................................................. 2, 5, 14

*City of Houston v. Dep't of Hous. & Urb. Dev.*,
  24 F.3d 1421 (D.C. Cir. 1994) ........................................................................................ 13

*City of New York v. U.S. Dep't of Defense*,
  913 F.3d 423 (4th Cir. 2019) ............................................................................................ 6

*Climate United Fund v. Citibank N.A.*,
  No. 1:25-cv-00698, 2025 WL 842360 (D.D.C. Mar. 18, 2025) ..................................... 13

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)........................................................................................................... 8

*Department of Education v. California*,
  145 S. Ct. 966 (2025)................................................................................................... 4, 13

*Disability Rts. S.C. v. McMaster*,
  24 F.4th 893 (4th Cir. 2022) ............................................................................................. 7

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
  438 U.S. 59 (1978)............................................................................................................. 7

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)........................................................................................................... 7

*FEC v. Cruz*,
  596 U.S. 289 (2022).......................................................................................................... 12

*HIAS, Inc. v. Trump*,
  985 F.3d 309 (4th Cir. 2021) ........................................................................................... 15

*In re Aiken County*,
  725 F.3d 255 (D.C. Cir. 2013).......................................................................................... 9

*Lance v. Coffman*,
  549 U.S. 437 (2007)........................................................................................................... 7

*Lincoln v. Vigil*,
  508 U.S. 182 (1993).......................................................................................................... 9

*Louisiana v. Biden*,
  622 F. Supp. 3d 267 (W.D. La. 2022) ...................................................................... 6

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ............................................................................................... 6

*Maine Cmty. Health Options v. United States*,
  590 U.S. 29 (2020) ................................................................................................. 2

*Md. Dep't of Hum. Res. v. U.S. Dep't of Health & Hum. Servs.*,
  763 F.2d 1441 (D.C. Cir. 1985) ............................................................................ 3

*Megapulse v. Lewis*, 672 F.2d 959
  (D.C. Cir. 1982) ............................................................................................. 3, 4, 11

*Middle East Broad. Networks v. United States*,
  Nos. 25-5150, 25-5151, 25-5158 (May 7, 2025) .................................................. 5

*Milk Train v. Veneman*,
  310 F.3d 747 (D.C. Cir. 2002) ............................................................................... 9

*Ohio v. EPA*,
  603 U.S. 279 (2024) ............................................................................................... 8

*Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*,
  313 F. Supp. 3d 62 (D.D.C. 2018) ........................................................................ 9

*Portsmouth Redevelopment & Housing Authority v. Pierce*,
  706 F.2d 471 (4th Cir. 1983) ................................................................................. 3

*Real Time Med. Sys., Inc. v. PointClickCare Tech., Inc.*,
  No. 8:24-cv-00313, 2024 WL 3569493 (D. Md. Jul. 29, 2024) .......................... 14

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
  No. 1:25-cv-00465, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ............................ 8

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
  No. 25-5066 (D.C. Cir. Mar. 14, 2025) ................................................................. 8

*United States v. J & E Salvage Co.*,
  55 F.3d 985 (4th Cir. 1995) ................................................................................... 3

*Widakuswara v. Lake*,
  Nos. 25-5144, 25-5145, 25-5150, 25-5151, 2025 WL 1288817
  (D.C. Cir. May 3, 2025) ................................................................................ 5, 8, 11

**Statutes**

2 U.S.C. §§ 683-684 ............................................................................................... 12

5 U.S.C. § 701 .......................................................................................................... 8

6 U.S.C. § 111 ........................................................................................................ 10

6 U.S.C. § 271 ........................................................................................................ 10

31 U.S.C. § 1301(a) ............................................................................................... 13

iii

Pub. L. No. 106–78, § 805, 113 Stat. 1135 (1999) .......................................................... 9

Pub. L. No. 116-6, 133 Stat. 13 (Feb. 15, 2019)........................................................... 10

**Regulations**

2 C.F.R. § 200.206 ............................................................................................................ 15

2 C.F.R. § 200.340 ..................................................................................................... 11, 12

85 Fed. Reg. 49506 (Aug. 13, 2023).......................................................................... 11, 12

89 Fed. Reg. 30046 (Apr. 22, 2024) ............................................................................... 11

**ARGUMENT**

At Defendants' urging, Plaintiffs applied for CIGP grants, built programs, hired staff to run those programs, and relied on the opportunity to carry out (and ultimately be reimbursed for) the programs for the duration of their grants. Without any legal authority to do so, and in the middle of the grants, Defendants pulled the plug on the CIGP. And they did so with no regard for the irreparable harms the decision immediately caused Plaintiffs or its frustration of Congress's will.

Defendants do not deny that they have eliminated the entire CIGP. Instead, they argue that this Court is powerless to stop them. Contrary to longstanding caselaw, Defendants argue that Plaintiffs' requests for prospective injunctive relief must be treated as requests for past-due money damages in the Court of Federal Claims. They create out of whole cloth new theories of standing, reviewability under the APA, and agency discretion. And when they finally address the merits of Plaintiffs' claims, they cannot justify their decision and instead cherry pick quotes from inapplicable cases and ignore Plaintiffs' evidence and arguments. This Court can and should reject these attempts to skirt liability and should preliminarily enjoin or stay Defendants' unilateral shuttering of a congressionally funded program.

## I.  This Court can decide Plaintiffs' claims.

### A.  The Tucker Act does not apply.

Plaintiffs challenge Defendants' entire dismantling of a grant program required by Congress and seek declaratory, injunctive, and administrative relief. Because the requested relief under the APA is prospective, and because Plaintiffs' constitutional and ultra vires claims do not allow for money damages, the Court of Federal Claims cannot grant any of the relief that Plaintiffs seek.

Defendants fail to address these arguments or acknowledge the Supreme Court cases that control. Instead, they rehash arguments about Plaintiffs' first complaint, which was filed *before* Defendants dismantled the entire CIGP. They argue that Plaintiffs' claims fail under *Megapulse*

1

and this Court's order denying preliminary relief but fail to apply either to the amended complaint. And they rely on orders from the Supreme Court, the Fourth Circuit, and the D.C. Circuit—none of which control here.

**1.** Plaintiffs seek the opportunity to continue their CIGP-specific work and continue to be eligible for reimbursement for this work. Pls.' Br. 12 (citing *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 327 (2020) and *Bowen v. Massachusetts*, 487 U.S. 879, 904-05, 904 n.39 (1988)). Plaintiffs made plain that they do not seek backward-looking relief in the form of money damages. Pls.' Br. 12. So the Tucker Act does not apply.

In response, Defendants contend (at 9)—without any explanation—that Plaintiffs have only artfully reframed their claims while still seeking the same relief. Not so. Plaintiffs' first complaint focused on the indefinite freeze of grant funds—including those funds that were owed as reimbursements for completed work. ECF No. 1, ¶¶ 65-68. And this Court determined preliminarily that because past-due funds were the core of Plaintiffs' complaint, money damages were the appropriate relief. But Plaintiffs' amended complaint addresses new factual developments and seeks different relief. After Plaintiffs filed their first complaint, Defendants dismantled the entirety of the CIGP via an across-the-board termination of all future CIGP funding. Plaintiffs' amended complaint asks this Court to enjoin that agency action, it does not seek *any* past-due sums.

Defendants likewise argue that "the appropriate relief is money damages." Defs.' Br. 12. But Defendants do not (and cannot) explain what those money damages would be or how anything in the amended complaint could even support a claim for money damages. Money damages are specific, calculated amounts "designed to compensate for completed labors." *Maine Cmty. Health*, 590 U.S. at 327. By Defendants' own telling, Defs.' Br. 7, Plaintiffs will be paid for all "completed labors" in the termination process. So money damages simply are no longer at issue in this case.

Nevertheless, Defendants quote irrelevant cases in which courts rejected attempts to cast claims for money damages as claims for injunctive relief. *See* Defs.' Br. 10. For example, in *Portsmouth Redevelopment & Housing Authority v. Pierce*, the plaintiff originally sought a specific sum of money owed. 706 F.2d 471, 473 (4th Cir. 1983). The court rejected the plaintiff's attempt to amend "and instead ask[] the court to 'direct an accounting of the sums owed.'" *Id.* Similarly, *American Science and Engineering, Inc. v. Califano* was "essentially a contract dispute" because the plaintiff brought a breach of contract claim and the "prayer for relief ma[de] it clear that enforcement of the license agreements or money damages was its aim, not correction of [an] alleged due process flaw." 571 F.2d 58, 63 (1st Cir. 1978). And *United States v. J & E Salvage Co.* held that no matter what labels the parties gave the claims, they could be resolved only through application of black-letter contract law. 55 F.3d 985, 988-89 (4th Cir. 1995) ("In addition to arguing at length that either a unilateral or mutual mistake of fact prevented the formation of a contract, the government refers repeatedly to questions about party 'intent,' 'meeting of minds,' the 'binding force of the contract,' and the 'terms of the sale,' and relies heavily on contract cases."). No similar contractual analysis is required here, nor do Defendants argue that it is.

**2.** As Plaintiffs' opening brief explained (at 11), under *Megapulse v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982), whether Defendants' wholesale dismantling of the CIGP is legal "turn[s] on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties," so the Tucker Act does not apply. *See Md. Dep't of Hum. Res. v. U.S. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985).

Instead of addressing that argument, Defendants once again argue that because a grant was the source of the *relationship* between the parties, it must also be the source of the rights. But the question under *Megapulse* is whether the court has to apply contract law to contract claims, no matter how they are styled. *See, e.g., J & E Salvage*, 55 F.3d at 988. Indeed, under Defendants'

3

reading, *Megapulse* would have come out the other way. After all, the source of the relationship between the parties in *Megapulse* was a contract. *See Megapulse*, 672 F.2d at 961. But the source of the company's legal claim was the statutory right to its data under the Trade Secrets Act. *Id.* And despite explicit provisions in the contract giving the Coast Guard access to use and disclose "all or any part" of the data provided, the court looked beyond the contract and held that the government had overstepped its statutory bounds in unrestrictedly releasing the data. *Id.* at 969.

**3.** Next, Defendants argue that this Court's prior decision aligns with decisions from the Supreme Court, Fourth Circuit, and D.C. Circuit. Defendants again ignore Plaintiffs' amended complaint and overread those decisions.

Defendants rely on the prior decision to argue that this Court already held that the requested relief is backward-looking money damages. Defs.' Br. 12. But Defendants fail to acknowledge that Plaintiffs no longer seek any reimbursement for past work. Defendants also argue that this Court has already held that because Defendants ordered grant recipients to stop their grant-funded work, there is no possibility of prospective relief. Defs.' Br. 12. But as explained in Plaintiffs' opening brief (at 12-13), the stop-work order is core to the CIGP dismantling, the very act that Plaintiffs seek to enjoin as illegal and unconstitutional. Defendants ignore that point altogether.

Defendants' reliance on orders from the Supreme Court, Fourth Circuit, and D.C. Circuit is also unavailing. As Plaintiffs' opening brief explained (at 13), the per curiam order in *Department of Education v. California* addressed specific terminations of individual grants, not the dismantling of an entire program. *See* 145 S. Ct. 966 (2025). And district courts have since held that *California* does not require that district courts are divested of jurisdiction to consider constitutional or statutory challenges to agency action simply because money is at stake. *See* Pls.' Br. 13-14 (collecting cases). Although the Fourth Circuit cited *California* to stay a preliminary injunction, it did not provide any reasoning at all. *See Am. Ass'n of Colls. For Tchr. Educ. v. McMahon*, No.

4

25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025). And the D.C. Circuit motions panel's recent order, which overreads *California*, has been stayed as the full court considers en banc review to correct the panel's errors. *See Widakuswara v. Lake*, Nos. 25-5144, 25-5145, 25-5150, 25-5151, 2025 WL 1288817 (D.C. Cir. May 3, 2025), *pet. for en banc rehearing pending*, *administratively stayed in relevant part sub nom. Middle East Broad. Networks v. United States*, Nos. 25-5150, 25-5151, 25-5158 (May 7, 2025) (en banc). In short, none of those decisions control this case.

**4.** Finally, Plaintiffs argued (at 14) that because they seek equitable relief, the Court of Federal Claims cannot provide an adequate remedy and thus this Court has jurisdiction under Section 704 of the APA. In response, Defendants argue that any requests for injunctive relief are either (1) allowed because they are incidental to the claims for money damages or (2) inconsequential because Plaintiffs can receive money damages.

That argument fails out of the blocks. As already explained, Plaintiffs do not have a claim for money damages, nor (according to Defendants) could Plaintiffs receive money damages because they will be reimbursed for expenses incurred up until the time of termination. In all events, even if some money damages were possible, Defendants' arguments were squarely rejected in *Bowen*. As to incidental injunctive relief under 28 U.S.C. §§ 1491(a)(2)-(3), the Court of Federal Claims' "certain equitable powers in specific kinds of litigation" do not apply "to actions involving review of an agency's administration of a grant-in-aid program." *Bowen*, 487 U.S. at 905 n.40. And "it is no answer to suggest" money damages when a party's interest is "in planning future programs" and seeking future reimbursements. *Id.* at 906. After all, "the Claims Court can neither grant equitable relief . . . nor act in any fashion so long as the Federal Government has not yet offset the disallowed amount from a future payment." *Id.* at 907. Even Justice Scalia's dissenting opinion agreed that the district court has jurisdiction when a grant recipient faces the "irreparable injury of

5

either forgoing a reimbursable program or mistakenly expending . . . funds that will not be reimbursed." *Id.* at 926 (Scalia, J., dissenting). That is precisely what Plaintiffs face here.

### B. CIGP's dismantling is a discrete agency action that this Court can enjoin.

Defendants do not argue that dismantling the CIGP was not a final agency action. Instead, they contend (at 15-17) that this Court cannot decide Plaintiffs' APA claims because they are an impermissible "broad programmatic attack" on Defendants' "operations" and will require the Court to oversee the day-to-day operations of the agency.

**1.** The case Defendants principally rely on defines "programmatic" challenges as "generalized grievances asking [a court] to improve an agency's performance or operations." *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 431 (4th Cir. 2019). But Plaintiffs do not seek an order telling Defendants to run the agency better, they seek specific relief from Defendants' illegal dismantling of the CIGP. That Defendants took a discrete action that affected all CIGP funding recipients does not render Plaintiffs' challenge "programmatic." An agency decision "applying some particular measure across the board"—like Defendants' across-the-board funding freeze and subsequent en masse termination of all CIGP funding via identical form letters—can "of course be challenged under the APA." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990).[1]

**2.** Defendants further contend (at 16-17) that a request for status reports on their compliance with any order that this Court might issue amounts to "day-to-day oversight" of the agency. Not so. Status reports are a common mechanism for assessing and ensuring compliance with

---

[1] Defendants misunderstand (at 17 n.14) the contours of the CIGP dismantling, which began with the Noem memo, continued with the funding freeze, and culminated with the mass termination email and letters on March 27. *See* Pls.' Br. 14-15. "[A] final agency action does not have to be defined as permanent to be considered final." *Louisiana v. Biden*, 622 F. Supp. 3d 267, 292 (W.D. La. 2022) (cleaned up) (collecting over a dozen cases in which courts found final agency action where agencies paused or delayed programs). An injunction or stay of only the mass termination could theoretically return Plaintiffs to the status quo ante of the indefinite funding freeze they initially sued to end. *See* Compl., ECF No. 1.

injunctions and provide an opportunity for Defendants to share information with Plaintiffs and the Court with the goal of avoiding any need for additional judicial intervention.

**C.  Plaintiffs have standing to challenge Defendants' violation of appropriations acts.**

Defendants do not challenge Plaintiffs' standing to bring the bulk of their claims. Defendants contend only that Plaintiffs have no standing to argue that dismantling the CIGP violates the appropriations acts. But Plaintiffs are CIGP funding recipients whose funding was illegally terminated as part of Defendants' overall dismantling of the entire CIGP. As such, they raise a "concrete and particularized" injury, not a "citizen" complaint based on a general "interest in proper application of the Constitution and laws," *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (internal citation omitted), or "an asserted right to have the Government act in accordance with the law" for the benefit of unaffected plaintiffs, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (internal quotation marks and citation omitted). Although Defendants do not challenge traceability, Plaintiffs' injuries are directly caused by Defendants' decision to dismantle the entire CIGP. *See Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022). So Plaintiffs' injuries are redressable by an order enjoining that dismantling, which would result in Defendants' compliance with the appropriations acts, among other laws, and restore Plaintiffs' access to CIGP funding for the remainder of their grant periods. *See id.* at 903.[2]

Defendants instead respond to an imaginary argument, insisting that Plaintiffs lack standing to ask "the Court to require Defendants to comply with the Appropriations Acts." Defs.' Br. 17. But that is not Plaintiffs' claim. Defendants confuse the legal basis of one of Plaintiffs' claims

---

[2] To the extent Defendants argue that even if the CIGP were restored, they might reobligate the funds so that Plaintiffs do not receive them, *see* Defs.' Br. 18, Plaintiffs do not have the burden to "negate . . . speculative and hypothetical possibilities . . . in order to demonstrate the likely effectiveness of judicial relief." *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 78 (1978).

(violation of the appropriations acts) with the relief sought (an injunction stopping the dismantling of the CIGP). And they provide no support for the proposition that standing turns on the outcome of a court order to "comply with" whatever laws Defendants are violating. Tellingly, the two cases Defendants cite are not about standing at all, they merely denied wholly different relief. *Widakuswara*—which, again, has been stayed by the en banc D.C. Circuit—held that an appropriations act did not give the plaintiffs "an unqualified right to the appropriated funds." 2025 WL 1288817, at *4. And *U.S. Conference of Catholic Bishops* held that the court could not order the government to reinstate a specific contract and pay money that was past due. *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465, 2025 WL 763738 (D.D.C. Mar. 11, 2025), *appeal filed,* No. 25-5066 (D.C. Cir. Mar. 14, 2025). Neither case supports this baseless standing argument.

## II. Plaintiffs are likely to succeed on the merits of their APA, separation of powers, and *ultra vires* claims.

### A. Defendants have no discretion to dismantle the CIGP, and do not contest that the dismantling was arbitrary and capricious.

Plaintiffs' brief explains (at 20-24) that the CIGP dismantling—from the Noem Memorandum to the termination—was arbitrary and capricious because it was neither "reasonable" nor "reasonably explained." Pls.' Br. 20 (quoting *Ohio v. EPA*, 603 U.S. 279, 292 (2024)). Defendants do not rebut those arguments on the merits (and thus forfeit the issue). *See* Defs.' Br. 20-21. Instead, Defendants try to evade APA review by arguing their decisions to freeze and ultimately refuse to spend appropriated CIGP funds are unreviewable under 5 U.S.C. § 701(a)(2) because they are "committed to agency discretion by law."

Courts apply a "presumption of judicial review" to APA claims and construe the Section 701(a)(2) exception "quite narrowly." *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (citation omitted). Defendants' cases do not satisfy that narrow exception. Indeed, one of

Defendants' cases proves Plaintiffs' point: When an agency's own funding regulations provide the requisite "clear and applicable standards for evaluating" a challenge to grant terminations, the decision "is not unreviewable agency action." *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 68 (D.D.C. 2018). There, then-Judge Jackson determined that HHS's decision to terminate grant funding "without any explanation and in contravention of its own regulations . . . easily qualifies as an arbitrary and capricious act under the APA." *Id.* So too here.

Defendants' other cases fare no better. *Lincoln v. Vigil* extends only to funding decisions from lump-sum appropriations where the program at issue is not mentioned in any relevant appropriations act. 508 U.S. 182, 192-94 (1993). Here, Congress specifically appropriated money for the CIGP for FY23 and FY24—it did not come out of a lump sum for USCIS. And in *Milk Train v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002), the appropriation was explicitly discretionary, directing that the funds "be disbursed 'in a manner determined appropriate by the Secretary.'" *Id.* at 749 (quoting Pub. L. No. 106–78, § 805, 113 Stat. 1135, 1179 (1999)). No such discretionary language exists here. Further, *Milk Train* addresses an agency's discretion to "disburse" or award funding, which is far afield from the ending of an entire program via mass terminations.

## B.  CIGP's dismantling is contrary to law.

**1.** *Appropriations Acts*. Defendants "may not disregard a statutory mandate to spend funds simply because of policy objections." *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 1:25-cv-00400, 2025 WL 752378 at \*15 (D.D.C. Mar. 10, 2025), *appeal filed*, No. 25-5098 (D.C. Cir. Apr. 2, 2025) (quoting *In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.)). The appropriations acts at issue here—both FY23 and FY24—unambiguously appropriate specific sums to Defendants "for the Citizenship and Integration Grant Program." *See* Pls.' Br. 3. This is a statutory mandate—it requires Defendants to award and disburse the funds. A grant program is not much of a grant program if there are no grants, after all. Defendants are correct that

"Congress left to [their] discretion the manner in which [] appropriated funds are actually expended." Defs.' Br. 21. But the funds must be spent, and spent "for the [CIGP]." By terminating *all* CIGP awards, including Plaintiffs', Defendants are unlawfully "acting to rescind or defer the funds Congress has appropriated and have no intent to spend them," violating these two appropriations acts. *AIDS Vaccine*, 2025 WL 752378 at \*15.

According to Defendants, once they have obligated appropriated funds, they are no longer bound by the appropriations act. That novel theory would turn the commands of appropriations acts into mere suggestions. Following Defendants' logic, an agency can delay obligating appropriated funds until the last day they remain available, and then simply terminate all the obligated funding the very next day. An agency that did not want to spend appropriated funds could, according to Defendants, repeat that every year without violating the appropriations acts. This Court should not reduce compliance with the law to such a shell game.

**2**. *Homeland Security Act*. Congress charged DHS with promoting instruction and training on citizenship, 6 U.S.C. § 271(f)(2), and the primary means USCIS developed to carry out that agency function was CIGP. Congress validated and approved that choice, as shown through the ongoing provision of CIGP funding. *See, e.g.*, Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, 133 Stat. 13 (Feb. 15, 2019). The Homeland Security Act prohibits Defendants from "diminish[ing] or neglect[ing]" that function, including by defunding the entire CIGP program without putting anything new in its place to promote citizenship instruction and training. 6 U.S.C. § 111(b)(1)(E). Defendants argue that because Section § 111(b)(1)(E) was enacted in 2002, it cannot apply to CIGP specifically, which started in 2009. But Defendants cite no authority for the proposition that abandoning the primary means they use to carry out one of their core agency functions—which has been specifically funded by Congress—does not "diminish[] or neglect[]"

10

that function simply because Congress's approval and funding of the program came later. And Plaintiffs are aware of none.

**3.** *Uniform Guidance*. In response to Plaintiffs' argument that the CIGP dismantling violated the Uniform Guidance, Defendants argue (at 24) that they complied with a wholly separate termination provision of the grants. That is irrelevant. Plaintiffs do not claim error in following termination procedures laid out in the grant agreement (which is also why this is not a contract claim). They claim instead that the Uniform Guidance forbids DHS to eliminate an entire grant program midstream based on a vague allusion to changed priorities.[3]

To the merits of *that* claim, Defendants devote a single sentence, arguing that agencies can cancel grants "for various reasons," including "a change in policy priorities." That is doubly wrong. First, as Plaintiffs' opening brief explained (at 18, 22-23), the CIGP's goals and the agency's stated priorities have not changed. Second, even if DHS *had* changed its priorities, that would not give it unilateral power to cancel grants or grant programs. That is because the Uniform Guidance permits termination only "if *an award* no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(2) (2020) and § 200.340(a)(4) (2024) (emphasis added). That applies if the grantee is no longer satisfying agency goals or priorities, not when an agency changes the program goals or its priorities. OMB's explanation of the 2020 revision to the Uniform Guidance makes that clear: "[I]f additional evidence reveals that a specific award objective is ineffective at achieving program goals, it may be in the government's interest to terminate the

---

[3] That the Uniform Guidance is incorporated into individual grant terms does not convert Plaintiffs' APA claims into contract claims. *See, e.g.*, *Widakuswara*, 2025 WL 1288817 at *4 n.5 (agreeing with the dissent that "the government cannot prevent enforcement of statutes through the APA merely by incorporating the statutes into contracts.") (quoting *Megapulse*, 672 F.2d at 967). If it did, Defendants could convert any constitutional or statutory claim into a contract claim by incorporating the Constitution and the U.S. Code into contract terms.

Federal award."[4] 85 Fed. Reg. 49506, 49507 (Aug. 13, 2020). There would be no need for "additional evidence" if an agency could simply change its priorities and cancel all grants deemed out of step with those new priorities. OMB was clear: one of the purposes of Section 200.340 is that "agencies are not able to terminate grants arbitrarily." *Id.* at 49509.

### C. Dismantling the CIGP exceeds statutory authority, violates the separation of powers, and is *ultra vires*.

**1.** Defendants fail to respond to Plaintiffs' freestanding APA claim that because no statute affirmatively gives Defendants the power to ignore statutory directives and withhold Congressionally appropriated funding, the CIGP dismantling is in excess of statutory authority in violation of Section 706(2)(C). *See* Pls.' Br. 20; *FEC v. Cruz*, 596 U.S. 289, 301 (2022) (agencies "literally ha[ve] no power to act . . . unless and until Congress authorizes [them] to do so"). Defendants have thus forfeited this argument too.

**2.** In response to Plaintiffs' arguments that the CIGP dismantling violates the separation of powers (under the APA and as a freestanding constitutional claim), Defendants conclude that individual grant terms and the Uniform Guidance allow grant terminations. But grant terms cannot supersede constitutional limits on an agency's power. In all events, Defendants simply ignore that the power of termination extends only "to the greatest extent authorized by law." 2 C.F.R. § 200.340(a)(4). And as Plaintiffs have explained, dismantling the CIGP is *not* "authorized by law" because the refusal to spend funds appropriated by Congress for a specific named program violates constitutional separation of powers and various statutes and regulations. *See* Pls.' Br. 15-19.

**3.** Defendants address Plaintiffs' *ultra vires* claim in a conclusory footnote, stating that no "clear and mandatory prohibition exists" to stop them from dismantling CIGP and refusing to

---

[4] OMB's 2024 revisions similarly state that agencies can "terminate an award in the circumstances described in paragraph (a)(2) in the prior version of the guidance." 89 Fed. Reg. 30046, 30089 (Apr. 22, 2024).

spend appropriated funds. Defs.' Br. 25 n.18. That is wrong. In addition to the appropriations acts and the Homeland Security Act, a decision to spend less than what Congress appropriated violates the Impoundment Control Act, 2 U.S.C. §§ 683-684, and the Anti-Deficiency Act, 31 U.S.C. § 1301(a). Defendants' actions are thus *ultra vires*.

### III. Plaintiffs are suffering irreparable harm that cannot be remedied by money damages or after a final judgment.

Plaintiffs outlined in detail (at 25-29) how they are suffering irreparable harms. In response, Defendants argue (again) that because Plaintiffs will not cease to exist, money damages suffice; that because the termination process might reimburse Plaintiffs for some indeterminate amount, there is no harm; and that Plaintiffs' reputational harm is speculative. Each argument is wrong.

**1.** Plaintiffs do not need to show that their "entire business will be forced to close" due to the termination. Defs.' Br. 26. Plaintiffs are already losing entire departments and programs that are critical to their ability to achieve their missions, and that they "lack the financial wherewithal" to keep running.[5] *Woonasquatucket*, 2025 WL 1116157, at *23 (internal quotation marks, citation omitted). Defendants compare (at 26) Plaintiffs' harms to those that Justice Jackson argued in dissent in *California*. But that was a dissent. And the *California* majority disagreed with Justice Jackson, holding that there was no irreparable harm because the plaintiffs "ha[d] the financial wherewithal to keep their programs running," 145 S. Ct. at 969, which Plaintiffs here do not.

**2.** Neither does the potential availability of termination costs erase Plaintiffs' irreparable harm, for four reasons. First, Plaintiffs' programs will still cease operation. Second, no Plaintiff

---

[5] That Defendants might still reobligate FY24 funds is evidence of irreparable harm for FY2024 grant recipients. "In cases involving government expenditures, 'once the relevant funds have been obligated, a court cannot reach them in order to award relief.' Any transfer, re-allocation, or re-obligation of these funds would be an irreparable loss." *Climate United Fund v. Citibank N.A.*, No. 1:25-cv-00698, 2025 WL 842360, at *9 (D.D.C. Mar. 18, 2025) (quoting *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426–27 (D.C. Cir. 1994)).

has yet been paid any termination costs, and there is no guarantee that any will be.[6] Third, termination costs allow only costs that cannot be discontinued—like those for Plaintiffs' lawyers that have an ethical obligation to continue to represent their clients—so they do not address the other myriad harms caused by having to shutter programs, fire staff, and reroute internal resources. Finally, Defendants' argument highlights the irreparable harm unique to prospective-looking grant programs: Plaintiffs seek reimbursement under the CIGP instead of up-front payment precisely because their specific costs cannot be determined ahead of time. Put simply, the possibility of receiving some termination costs does not change that Plaintiffs face the "irreparable injury of either forgoing a reimbursable program or mistakenly expending . . . funds that will not be reimbursed" as part of a final judgment. *Bowen*, 487 U.S. at 926 (Scalia, J., dissenting).

**3.** Finally, Defendants argue (at 28-29) that Plaintiffs' reputational harm is uncorroborated speculation. But Plaintiffs outlined their reputational harms (at 28-29) and attached multiple supporting declarations, which Defendants do not contradict (or even acknowledge). Specifically, Plaintiffs have received negative feedback from clients and funders following the loss of funding, Ex. A, ¶ 26, J.R. 521; Ex. B, ¶ 24, J.R. 572; Ex. D, ¶ 24, J.R. 546; Ex. E, ¶ 27, J.R. 555; Ex. G, ¶ 24, J.R. 572; Ex. H, ¶ 24, J.R. 585; Ex. J, ¶¶ 23-24, J.R. 602-03. Plaintiffs have heard rumors circulating that they are going out of business or are no longer able to help, Ex. G, ¶ 24, J.R. 572; have had subgrantee organizations refuse to continue working with them, Ex. F, ¶ 21, J.R. 562-63; and have seen staff morale plummet, Ex. D, ¶ 17, J.R. 545; Ex. E, ¶ 18, J.R. 553. A funder denied a grant application due to fears that the loss of CIGP funding foretells a dire future for the

---

[6] Two plaintiffs—HIAS PA and IDLP—have requested the full balance of their grant funding as "termination costs." Ex. G ¶ 11, J.R. 568; Ex. I ¶ 12, J.R. 591-92. If Defendants were to pay out the entirety of each organization's grant balance as "termination costs," those Plaintiffs' claims might be moot. But Defendants have not paid either Plaintiff any termination costs, let alone the full balance of their grant awards.

organization. Ex. G, ¶ 24, J.R. 572-73. And relationships with hard-to-reach communities that Plaintiffs invested years in have frayed. Ex. A, ¶¶ 34-36, J.R. 523; Ex. C, ¶ 21, J.R. 539; Ex. G, ¶ 31, J.R. 575. In short, the effects on Plaintiffs' reputations are "actual and imminent, not remote or speculative." *Real Time Med. Sys., Inc. v. PointClickCare Tech., Inc.*, No. 8:24-cv-00313, 2024 WL 3569493 (D. Md. Jul. 29, 2024). Moreover, Defendants fail to acknowledge that federal agencies are required to review "non-public" records in SAM when assessing a funding applicant's "risk," and this termination for failure to effectuate program goals and agency priorities will certainly be part of that assessment. 2 C.F.R. § 200.206(a)(2).

**IV. The balance of the equities favors Plaintiffs and broad relief is warranted.**

**1.** In response to Plaintiffs' showing that the balance of the equities and public interest tip strongly in their favor, Defendants argue that an injunction would hamper Secretary Noem from exercising her discretion and would irreparably harm the United States by forcing it to "release funds." Defs.' Br. 29. But as explained above, Secretary Noem does not have discretion to dismantle the CIGP. *See supra* at 8-9. And Defendants will not be harmed by funding the exact program Congress directed them to in the applicable appropriations acts. *See supra* at 9.

**2.** Defendants do not oppose a Section 705 stay, which Plaintiffs request in the alternative to a nationwide injunction. But a nationwide injunction—which would enjoin only Defendants— would also be appropriate here because Defendants' "categorical policy" calls for categorical relief. *HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021).

## CONCLUSION

For these reasons, the Court should postpone the effective date of Defendants' dissolution of CIGP under Section 705 of the APA and preliminarily enjoin Defendants from ending the CIGP until the Court can further consider the merits.

May 12, 2025

Niyati Shah (Bar No. 31526)
Shalaka Phadnis*
ASIAN AMERICANS ADVANCING
JUSTICE—AAJC
1620 L St. NW, Suite 1050
Washington, DC 20036
Phone: (202) 296-2318
nshah@advancingjustice-aajc.org
sphadnis@advancingjustice-aajc.org

Jose Perez*
Rex Chen*
LATINOJUSTICE PRLDEF,
475 Riverside Dr., Suite 1901
New York, NY 10115
Phone: (212) 219-3360
Fax: (212) 431-4276
jperez@latinojustice.org
rchen@latinojustice.org

Nickole Durbin-Felix*
LATINOJUSTICE PRLDEF
4700 Millenia Blvd., Suite 500
Orlando, FL 32839
Phone: (321) 247-6657
ndurbin-felix@latinojustice.org

[+]*Application for full admission pending*
**Admitted** pro hac vice

Respectfully submitted,

 _/s/ Bradley Girard_
Bradley Girard (Bar No. 31437)
Sarah M. Rich*
Adnan Perwez*
Robin F. Thurston (Bar No. 31584)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
bgirard@democracyforward.org
srich@democracyforward.org
aperwez@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs*

16